**CLAYTON v. UNITED STATES.**

No. 10972.

Circuit Court of Appeals, Ninth Circuit.

Dec. 27, 1945.

Robertson & Smith, Del Cary Smith, Jr., and Harold M. Gleeson, all of Spokane, Wash., for appellant.

Edward M. Connelly, U. S. Atty., and Harvey Erickson, and Frank R. Freeman, Asst. U. S. Attys., both of Spokane, Wash., for appellee.

Before GARRECHT, MATHEWS, and HEALY, Circuit Judges.

HEALY, Circuit Judge.

Appellant, with two others, namely Wilma Shirley Doores and Edward William Kelly, was charged with conspiring to extort money and narcotics from a physician by means of the impersonation of a federal officer. The co-defendants, who, in addition to the conspiracy, were charged with the substantive offense of extortion, pleaded guilty on all counts but had not been sentenced at the time appellant was tried on the conspiracy count. The trial resulted in appellant's conviction. The question on appeal is whether he is entitled to a reversal because of statements made by the United States Attorney in the course of his closing argument to the jury.

A summary of the evidence is essential to an understanding of the point. Although not married, appellant and Wilma Shirley Doores were and had been for about five years living in an ostensible relationship of husband and wife and together occupied a home in Spokane, Washington. The Doores woman, whom for brevity we shall call Shirley, had been illicitly securing narcotics from a Coeur d'Alene physician. There was evidence that appellant, Shirley, Kelly, and Shirley's brother "Bunny" Doores, met and devised a plan whereby Kelly, posing as a narcotics officer, would inform the doctor that he was checking upon the prescriptions on which Shirley had procured the drugs, it being expected that in this way the doctor could be induced to part with a substantial sum of money. According to testimony given by Kelly and Bunny Doores, who

were called on behalf of the government, the scheme was suggested by appellant. Following its formulation Kelly and Shirley went to Coeur d'Alene, and through Kelly's impersonation succeeded in obtaining money and narcotics from the doctor.

At intervals over a period of several months thereafter further sums, amounting in all to $14,000, were extorted from the physician on the strength of this device, all of the money being paid by the doctor to Shirley on the understanding that the latter would square things with the supposed officer. Shirley accounted to Kelly and her brother for only small portions of the amounts received, but there was evidence tending to prove that a large part was turned over to appellant. Eventually the doctor informed the authorities and arrests followed.

At the time of appellant's trial Shirley was at liberty on bond and living with appellant. She was called by the government but was asked only whether she and appellant were married, a query which she answered in the negative. Appellant took the stand in his own behalf to deny knowledge of the conspiracy or participation in its fruits. He did not call Shirley as a witness, although in the course of the trial her counsel, who was also co-counsel for appellant, intimated in the absence of the jury that she would probably be called, stating that the problem of her being used as a witness had not yet been determined.

In this frame of reference we consider the challenged portions of the district attorney's argument. Those of his remarks which counsel have here seriously stressed are shown on the margin.[1]

The observation relative to the district attorney's lack of authority to recommend leniency for Kelly need not detain us. It is conceded to be the uniform policy of the court below neither to seek from the United States Attorney nor permit him to offer suggestions concerning sentences. The observation was no more than an accurate reflection of the policy. Although no proof of the existence of this practice was before the jury, we think their being informed of it could not substantially prejudice the defense. Kelly might of course reasonably expect that the court, of its own motion, would take into consideration his plea of guilty and his willingness to testify; and nothing that the prosecuting officer said militated against the influence on Kelly of such a hope.

The balance of the argument contains the passages to which most serious exception is taken. These are the remarks to the effect that Shirley Doores had by her plea of guilty admitted her part in the conspiracy; that she would not lie for anyone; and that she had not taken the stand and supported appellant's claim of non-participation in the scheme. Appellant concedes the rule that if a party has it peculiarly within his power to produce a witness whose testimony would elucidate the mat-

[1] "Mr. Connelly: * * * Kelly was man enough to plead guilty and testify, and there was nothing I could offer him. The penalties in this court are fixed by the Court alone. District Attorneys are not even allowed to make recommendations as to penalties.

"Mr. Smith: This argument is outside the case, and I object to it.

"The Court: I think it is perfectly proper argument, and I will not sustain the objection. Under the instructions you have requested, I think it is proper. * *

"Mr. Connelly: * * *

"Shirley Doores has pled guilty, and in that connection, talking about witnesses who did not appear and those who did, has it occurred to you that the matter of the deed, paying the money, the exchange of deeds, the absence of Clayton from the meeting when the conspiracy was planned, if this were only Shirley Doores' deal with Kelly and Bunny, and if that is what he is relying on under this indictment for conspiracy, if the contentions of this man Clayton and the arguments of his counsel are true, the answer to all of it would be a simple statement of fact upon the witness stand from this girl who has pled guilty already.

"Shirley Doores, a narcotic addict, broken in health, taking bismuth from Dr. Teed—and he told you what for—has reached the end of her lane. Apprehended in this case, with whatever elements of courage she has left in her makeup, she has admitted she did it, but she will not lie for anyone, and she hasn't lied for anyone, and she has not taken this witness stand and supported her common-law husband in one single iota of his claim here.

"Mr. Smith: I object to the statement that Shirley Doores would not lie for anybody. I do not think it is a fair inference to draw from the testimony.

"The Court: The jury is the exclusive judge of all the testimony, and will pass upon the argument, and give it such weight as it sees fit."

ter under investigation, the fact that he does not do so gives rise to a presumption that the testimony, if produced, would be unfavorable. His point is that this principle does not apply to the non-production of a co-defendant in a criminal case, this for the reason that an accused party can not be compelled to testify for either side. Hence, he says, the Doores woman was in no true sense available to him as a witness, and no inference unfavorable to him could properly be drawn from his failure to call her.

The view finds some support in our decision in Moyer v. United States, 9 Cir., 78 F.2d 624, and in several state decisions cited by appellant. The Moyer case as well as other cases therein cited as authority, is distinguishable in that it had to do, not with argument of counsel, but with an instruction of the court. Too, the facts were different in that no intimate relationship appeared to exist between any of the co-defendants and the accused Moyer. Alford v. United States, 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624, quoted from in the opinion, involved only undue restrictions imposed upon the cross examination of a witness.

The record here shows that both counsel and the court were alive to the fact that Shirley Doores could not be compelled to testify if she chose to assert her privilege. Yet no instruction covering the point was requested by appellant, notwithstanding there was both opportunity and incentive to make the request. The court's ruling on the objection to the district attorney's argument can not fairly be construed either as a refusal to give such an instruction or as being tantamount to an instruction to the contrary. In the first place, the objection did not specifically direct the court's attention to the point, and secondly, the district attorney had not told the jury that it was within the power of the defense to compel the woman to testify. His misconduct, if any, lay in commenting on the fact that she did not take the stand in support of appellant—a course which, he intimated, she would naturally have pursued had the truth lay on his side.

We think the jury might legitimately have reached that conclusion itself, without prompting of counsel. If so, it was not improper for counsel to suggest the inference. To be sure the woman, awaiting sentence on her plea, was privileged to remain silent if she chose; but to the extent that she might voluntarily testify she was obviously more accessible to the defense than to the government. The prosecution, remembering her intimate relationship with appellant and knowing that the latter contemplated calling her, could hardly be expected to take the risk of questioning her on the subject of appellant's participation in the conspiracy. And here we reach the important distinction between this case and those like Moyer v. United States, supra, dealing generally with comments of the judge relative to the failure of a party defendant to call a witness who happens also to be a codefendant. Here, the association of the witness with the party on trial was such that, in the common experience of mankind, one would expect her voluntarily to support his testimony if she could truthfully do so. The district attorney's argument can not fairly be said to have gone farther than that. Any misapprehension that might arise from the partial nature of his discussion could readily have been dissipated by an instruction. Having neglected to ask such an instruction, appellant is in no position to complain of the court's failure to give it.

The whole argument on this phase sounds hollow when it is remembered that counsel, speaking both for appellant and Shirley, had informed the court not only that the woman would probably be called as a witness, but that it was his understanding that she was willing to testify. A study of this portion of the record leaves the conviction that the ultimate decision against calling her was not reached on the score of her unwillingness to testify, but merely on considerations having to do with trial tactics. The evidence of appellant's guilt was persuasive. In such circumstances, even if the point had some technical merit, a reversal would not be warranted on a showing of prejudice so unconvincing as this.

One or two other points are argued in the brief but they appear to have been abandoned. We have examined them but find no error.

Affirmed.