356 F.2d 834
 WORLD WIDE AUTOMATIC ARCHERY, INC., a corporation formed in
the State of Washington, a/k/a World Wide
Automatic Archery Lanes, Inc., Jerold B.
Hegg and Samuel T. Mendenhall,
Appellants,
v.
UNITED STATES of America, Appellee.
 No. 20109.
 United States Court of Appeals Ninth Circuit.
 Feb. 11, 1966, Rehearing Denied March 22, 1966.
 
 Opendack & Alfieri, Henry Opendack, Seattle, Wash., for appellants.
 William N. Goodwin, U.S. Atty., Robert C. Williams, Asst. U.S. Atty., Seattle, Wash., for appellee.
 Before BARNES, KOELSCH and BROWNING, Circuit Judges.
 BARNES, Circuit Judge:
 
 
 1
 The United States indicted World Wide Automatic Archery, Inc., a corporation, and defendants Hegg, Mendenhall, Choate and Robbins in a nine count indictment, charging them with the execution of a fraudulent scheme to sell securities, in violation of 18 U.S.C. 1341 and 15 U.S.C. 77q(a), and with conspiracy to so violate. (18 U.S.C. 371.) Messrs. Choate and Robbins turned state's evidence, and pleaded guilty. The three remaining defendants were found guilty by a jury on all counts. Various concurrent and consecutive sentences were imposed, so that defendant Hegg was sentenced to a total of eleven years, and Mendenhall to ten years. The corporate defendant was fined $10,000.
 
 
 2
 Jurisdiction below rests on 18 U.S.C. 3231. Here, it rests on 28 U.S.C. 1291.
 
 
 3
 Although at liberty on bond, appellants appealed in forma pauperis, and a 2,055 page Reporter's Transcript was prepared on their behalf at government expense.
 
 
 4
 On this appeal, six errors are alleged. These are described by appellants' counsel as follows:
 
 
 5
 1. Right to counsel.
 
 
 6
 2. Self-incrimination.
 
 
 7
 3. Fair trial, equal protection.
 
 
 8
 4. Failure to give instruction.
 
 
 9
 5. Failure to allow daily record.
 
 
 10
 6. Failure to furnish copy of instructions.
 
 
 11
 We find all points to be without merit.
 
 
 12
 * The indictment was returned May 20, 1964. The trial commenced on January 12, 1965, and continued to January 29, 1965.
 
 
 13
 On November 25, 1964, Internal Revenue agents of the United States entered the law offices of attorneys for appellants, and levied against each of the partners for income taxes. When the delinquent income taxes were not immediately paid, the entire office was closed; the locks changed and the two partners denied access to their office premises and files.
 
 
 14
 Five days later counsel's offices were turned back to them. This was apparently the result of the institution of a civil suit by appellants' counsel against the government (No. 6328), which was dismissed on stipulation, dated December 4, 1964, which recited, among other things:
 
 
 15
 'Plaintiffs acknowledged that they have been given access to such files as were needed by them for the conduct of cases pending in their office from and after November 25, 1964, and that plaintiffs presently have custody of all such files in an undamaged condition * * *.' (Supplemental C.T.)
 
 
 16
 Despite (a) this acknowledgment of 'access'; (b) the testimony of the government witnesses (on the motion to dismiss this action based on such levy) that Mr. Alfieri had asked to remove, and had removed, three federal court files and one state court file (describing them by name); (c) that Mr. Alfieri had subsequently obtained a court order enabling him to obtain books from his office on November 27, 1964; (d) that Mr. Alfieri had stated at the hearing of the motion to dismiss, as follows:
 
 
 17
 'We were permitted to remove certain files. Certain members of the Internal Revenue Service did come back and say we were permitted to remove any files we wanted, to avoid the problem';
 
 
 18
 and (e) that Mr. Alfieri stated: 'there is no question * * * that the files were returned in an undamaged condition' (R.T. #109, pp. 2, 4), it is now urged that this dispute between counsel and the government tainted this case, and affected the rights of these appellants.
 
 
 19
 Counsel for appellants now state that a forty page typewritten document prepared by defendant Mendenhall and delivered to the law office on November 18, 1964 could not later be found; that while they make no accusation that anyone took the document on behalf of the government,[1] it is urged that somehow their clients' right to privacy, i.e., the client's right to 'converse, communicate and correspond' with his attorney, was destroyed.
 
 
 20
 Counsel for appellants specifically deny they charge or rely on any charge of illegal search or seizure. We presume appellants urge that some revenue agent saw this forty page document, and must have disclosed (or perhaps did disclose) its contents to the government prosecutors on the fraud charge made against these appellants. As the trial court stated-- there is no proof of any access by the prosecution to this document. There is not even any proof as to the contents of the document. No one ever contended or stated as a fact that any information regarding this case had been seen by any governmental agency other than Internal Revenue Service officers levying against the delinquent taxpayers' property.
 
 
 21
 Appellants have entirely failed to show they were denied due process of law; or any causal connection between the forty page document and their prosecution. United States ex rel. Darcy v. Handy, 351 U.S. 454, 462, 76 S.Ct. 965, 100 L.Ed. 1331 (1956).
 
 II
 
 22
 Appellants next urge that defendant Hegg and Mendenhall were compelled to appear and testify before the Securities and Exchange Commission without an attorney, and that this violated their Fifth Amendment rights. This point was urged on the first day of trial, the court heard the matter, and affidavits were filed. At best they presented an issue of fact, ruled on adversely to appellants.
 
 
 23
 We note that a full transcript of the testimony given before the SEC was delivered to counsel for appellants (R.T. #110, pp. 1279-80). It disclosed appellants were fully advised of their constitutional rights prior to testifying. No further effort to dispute the record by calling of the SEC officials present, or any other SEC employee, was made by appellants. Counsel for appellants stated he did not wish to present any further evidence on this question (R.T. #110, p. 1373). The transcript was never offered in evidence against appellants.
 
 
 24
 No error is discernible in the record.
 
 III
 
 25
 Appellants urge that they did not have a fair trial because the government caused one Shepter (the alleged inventor of certain archery equipment the appellants were to use) to be released as a witness before testifying. When the appellants got around to attempt to subpoena Shepter, he had returned to New Haven, Connecticut. On January 11, 1965 the government's return on its subpoena duces tecum of Shepter was filed. The government kept the produced documents, but released Shepter. Three days later appellants' counsel asked the court to order him returned, at government expense, even though he (Alfieri) was not prepared to show appellants' indigency. Because there was no showing of indigency, the trial court refused to order payment of transportation for Shepter. However, the court twice said: 'If the Court has the authority to require it, I am quite willing to consider it.' (R.T. #110, pp. 466-67; 562.)
 
 
 26
 These facts are dissimilar to those in People v. Wilson, the Illinois case cited by appellants (24 Ill.2d 425, 182 N.E.2d 203 (1962)), where federal agents sent a crucial witness beyond the jurisdiction of the court. No accusation of bad faith is here made against the government. The trial court invited but appellants chose not to avail themselves of the privilege of Rule 17(b) of the Federal Rules of Criminal Procedure. It is now too late to complain.
 
 
 27
 As the trial judge aptly remarked (R.T. #110, p. 1823):
 
 
 28
 'THE COURT: But I can't on the showing made here. I can't conclude that Mr. Shepter was sent back by the government to avoid being called by the defendants. It seems to me that if you had in mind using him, it was your obligation to subpoena him yourself.'
 
 IV
 
 29
 Appellants next complain of the refusal of the court to instruct that:
 
 
 30
 'You are instructed that under the law the failure of a party to produce a witness within his control gives rise to a presumption that the testimony of that witness would be unfavorable to that party.' (Supplemental C.T. p. 79.)
 
 
 31
 This was in reference to the witness Shepter.
 
 
 32
 First, this is not a valid, well-phrased instruction, for it omits certain important elements: (a) that the witness is a material witness; (b) that the witness' testimony would elucidate matters under investigation; and (c) that it was peculiarly within the state's power to produce such witness. Clayton v. United States, 152 F.2d 402, 403-404 (9th Cir. 1945).
 
 
 33
 Second, the proposed instruction assumes that there was evidence the government 'withheld' a witness. Failure to call a witness is not the equivalent of withholding him from the defendant's use of process.
 
 
 34
 Finally, when the trial judge stated he would refuse the above instruction proffered, he advised Mr. Opendack that he could argue to the jury his excuse for his own failure to subpoena Shepter.
 
 Said Mr. Opendack:
 
 35
 'That will be fine.'
 
 The Court:
 
 36
 'But I won't instruct them.'
 
 Mr. Opendack:
 
 37
 'That will be fine. I would like to be allowed to say certain things.' (R.T. #110, p. 1824.)
 
 
 38
 The court acted properly, defense counsel assented to the procedure, and we find no error.
 
 V
 
 39
 Appellants claim that error was committed by the trial court in not permitting the defendants to have their own reporter to take his own shorthand notes. The trial court pointed out the difficulties in having two sets of shorthand notes-- one official and one not, but ordered that each side might have a secretary at counsel table. Neither side took advantage of this order.
 
 
 40
 We find no error.
 
 VI
 
 41
 Finally, appellants compained, after all instructions had been given, that they had not been given a copy of all instructions prior to the court's giving them. Obviously no action could remedy this ill-timed request, or objection if it was one. The colloquy between court and counsel on this subject convinces us of its lack of merit as a basis for appeal.
 
 
 42
 There having been a suggestion of the death of appellant Mendenhall during this appeal, the matter is dismissed as to him. Finding no error, we affirm the judgment of conviction as to appellant Hegg and the appellant corporation, World Wide Automatic Archery, Inc.
 
 
 43
 Affirmed.
 
 
 
 [1]
 Mr. Alfieri emphasized in oral argument he made no accusation any person had stolen or removed this document, or any other. At the trial, Mr. Alfieri stated only that 'all files' had been returned 'undamaged.'