**UNITED STATES of America,**
**Appellee,**

v.

**Owsley STANLEY, Robert W. Massey,**
**William A. Spires and Robert D.**
**Thomas, Appellants.**

**No. 25473.**

United States Court of Appeals,
Ninth Circuit.

June 1, 1970.

Rehearing Denied July 13, 1970.

---

Michael H. Metzger (argued), Daniel H. Weinstein, San Francisco, Cal., A. Matthews, Van Nuys, Cal., for appellants Massey & Spires.

Henry B. Rothblatt, New York City, for appellant Stanley.

Arthur Harris, Berkeley, Cal., for appellant Thomas.

Paul Sloan (argued), Asst. U. S. Atty., James L. Browning, Jr., U. S. Atty., San Francisco, Cal., for appellee.

Before CHAMBERS, MERRILL and CARTER, Circuit Judges.

JAMES M. CARTER, Circuit Judge.

Appellants were convicted after a court trial on three counts of violating the Federal Food, Drug and Cosmetic Act for possession, manufacture and conspiracy to maufacture and sell LSD (d-lysergic acid diethylamide).[1] Appellant Spires was also found guilty on two counts of selling LSD during the period of the conspiracy.[2] Each appellant was sentenced to 3 years in prison and fined $3,000. They appeal claiming a variety of errors in the proceedings below. Five contentions merit discussion. None however, require a reversal of the convictions. Necessary facts will be brought out in the discussion of the contentions of error.

[1.] Convictions on the conspiracy count were based on 18 U.S.C. § 371; 21 U.S.C. § 321(v) (3); 21 U.S.C. § 331(q) (1–3); 21 U.S.C. § 333(a); 21 U.S.C. § 360a (a–c); and 21 CFR 166.3(c) (3). All references to 21 U.S.C. are to the 1965 amendments to the title.

Convictions on the manufacturing count were based on 21 U.S.C. § 321(v) (3); 21 U.S.C. § 331(q) (1); 21 U.S.C. § 333 (a); 21 U.S.C. § 360a(a); and 21 CFR 166.3(c) (3). All references to 21 U.S.C. are to the 1965 amendments to the title.

Convictions on the possession count were based on 21 U.S.C. § 321(v) (3); 21 U.S.C. § 331(q) (3); 21 U.S.C. § 333 (a); 21 U.S.C. § 360a(c); and 21 CFR 166.3(c) (3). All references to 21 U.S.C. are to the 1965 amendments to the title.

2. Convictions on the sale counts were based on 21 U.S.C. § 321(v) (3); 21 U.S.C. § 331(q) (2); 21 U.S.C. § 333(a); 21 U.S.C. § 360a(b); and 21 CFR 166.3(c) (3). All references to 21 U.S.C. are to the 1965 amendments to the title.

### I. *There was No Error in the Denial of the Motion to Suppress.*

■ Operating under a search warrant, law enforcement officers entered the premises at 69 La Espiral Street, Orinda, California. Inside the house they found what can fairly be described as a small factory for the manufacture of LSD. Several appellants found on the premises were taken into custody. Appellants contend that there was insufficient probable cause for the search and that the affidavit for the search warrant was deficient under Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). We find no merit to either contention.

*Aguilar* requires a two part test for magistrates to determine the sufficiency of an affidavit grounded on information received from an informer. The magistrate must be shown "underlying circumstances" to indicate (1) that the information received was true, and (2) that the informer was reliable.

Here the affidavits of Agents Krusko and Barron indicate the following: (1) Agent Krusko had previously purchased $3400 worth of LSD tablets from appellant Spires. (2) On December 19, 1967, two days before the warrant was issued, Spires told Agent Krusko that he would be able to provide one gram of LSD tablets. On that occasion, Spires told Agent Krusko that he would be manufacturing LSD until at least December 21, and asked Krusko to contact him at home. (3) Agent Barron has observed the premises at 69 La Espiral for a period of eleven hours on December 20 and had seen no one enter the premises. (4) Approximately four hours after beginning his surveillance, Agent Barron had seen appellant Spires inside the house.

We find that probable cause evidence was sufficient to authorize a search of the 69 La Espiral premises for LSD manufacturing equipment. The underlying evidence clearly supported the agents' conclusions. Further, all matters had been directly observed or heard by the agents. Unlike *Aguilar,* no issue of informer credibility was present. The agents took their information directly from the wrongdoer.

### II. *The Statutory Scheme did not Violate Appellants' Privileges against Self-incrimination.*

■ Appellants contend that the statutory provisions for the control of LSD manufacturing wrongly forced them to incriminate themselves. They contend that they were forced by federal law to register as LSD manufacturers; that a direct consequence of federal registration would have been that federal agents would have informed state law officers of their activities. In all probability, appellants contend, the state then would have initiated prosecutions for the illegal manufacture or possession of LSD. Appellants' argument fails on two counts.

First, appellants were not prosecuted for a failure to register as LSD manufacturers. They were prosecuted under the specific statutory scheme which forbids the manufacture of LSD. Appellants' failure to register clearly did not subject them to any penalty nor did it lead to their arrest on the manufacturing charges.

■ Second, appellants failed to raise their claim in the trial court. They are therefore prevented from raising it for the first time on appeal. The Supreme Court cases of Haynes v. United States, 390 U.S. 85, 88 S.Ct. 722, 19 L.Ed.2d 923 (1968); Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968); Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968) and Leary v. United States, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969) relied on by appellants had all been decided prior to appellants' trial. It is clear therefore, that appellants' retained counsel were well informed of the pertinent self-incrimination law. Having chosen not to raise the matter at trial, appellants have waived their right to raise it here.

### III. *There Was Sufficient Evidence to Convict Thomas.*

Appellant Thomas contends that his only guilt was that of association with the other appellants. Accordingly, he asks a reversal of his convictions.

A review of the transcript shows substantial evidence from which findings of guilt could have been found. (1) Thomas was arrested on the premises at 69 La Espiral. (2) The previous day he had been spotted at the house for a considerable period of time. (3) On a number of occasions during the course of the conspiracy he had been seen with other appellants in situations which suggested activities furthering the manufacture and distribution of LSD. (4) Thomas spoke to another appellant shortly after the arrests about the irony of the arrests in view of an earlier discussion of what to do "if the Feds busted." Since the trial court may draw the inferences most favorable to the Government, we believe that the conviction should stand.

### IV. *Appellants Were Properly Given Consecutive Sentences for Manufacture and Possession.*

Count 4 of the Information charged appellants with the manufacture of LSD under 21 U.S.C. §§ 331(q) (1) and 360a (a) (1965 Amendment). Count 5 of the Information charged that appellants "did knowingly and unlawfully possess approximately 67.58 grams of LSD" in violation of 21 U.S.C. §§ 331(q) (3) and 360a(c) (1965 Amendment). The court found appellants guilty of both offenses and sentenced them to one year in prison and fined them $1000 for each violation, with sentences to run consecutively. Appellants now contend that possession was a necessary ingredient in the manufacturing charge, and dual convictions and consecutive sentences were improper.

Appellants fail to distinguish between the provisions of the 1965 and 1968 amendments to the Federal Food, Drug and Cosmetic Act. While appellants were tried after the enactment of the 1968 amendments, those amendments apply only to offenses committed after October 24, 1968 (Section 6 of Pub.L. 90–639, 82 Stat. 1361). Appellants' manufacturing and possession offenses took place December 21, 1967. They were therefore prosecuted under the provisions of the 1965 amendments.

The 1965 amendments brought "depressant or stimulant" drugs, including LSD, under the coverage of the Federal Food, Drug and Cosmetic Act.[3] Manufacture and sale were prohibited.[4] Possession was regulated in the following manner under 21 U.S.C. § 360a(c).

"No person * * * shall possess any depressant or stimulant drug otherwise than (1) for the personal use of himself or of a member of his household, or (2) for administration to an animal owned by him or a member of his household. In any criminal prosecution for possession * * * in violation of this subsection * * * the United States shall have the burden of proof that the possession involved does not come within the exceptions contained in clauses (1) and (2) of the preceding sentence."

In essence, possession for personal use was not forbidden; possession for sale was.

The 1968 amendment in practical effect made all possession criminal. It specified two categories of possession; possession for "sale, delivery, or other disposal to another" and other possession.[5]

Appellants' contention that possession is a necessary ingredient of manufacture is valid only as regards "other possession" section of the 1968 amendment. The contention is invalid

---

3. 21 U.S.C. § 321(v) (3) (1965 amendment).

4. 21 U.S.C. § 331(q) (1, 2) and 21 U.S.C. § 360a(a, b) (1965 amendments.)

5. 21 U.S.C. § 331(q) (3) and 21 U.S.C. § 360a(c).

as regards the 1965 amendment, the amendment under which appellants were prosecuted and convicted.

Under the 1965 amendment a person may manufacture LSD for his own use or for other lawful purposes. In so doing he does not violate the possession section. Alternatively, it is obvious that a person may unlawfully possess LSD without having manufactured it.

Finally, as is the case here, a person may manufacture LSD and unlawfully possess it. The two offenses, however, require different elements of proof. As noted, the 1965 amendment expressly placed on the government the burden of showing possession for an unlawful purpose. In this case, the evidence overwhelmingly shows that the government met that burden. It was apparent the possession of the LSD was for purposes of sale.

█ We are similarly unimpressed with appellants' claim that the legislative scheme did not envision "a pyramiding of penalties" for manufacturing and possession offenses. Appellants cite nothing in the statutory scheme or the legislative history in support of such a contention.

### V. *Stanley's Post-arrest Statements Do Not Invalidate His Conviction.*

█ At the time of arrest, Stanley was given a full Miranda warning. He stated he understood his rights and desired to call an attorney. He was told that he would be able to do so when he was booked at the police station. Before being booked, Stanley remained several hours at 69 La Espiral to aid in and observe the police collection of contraband.[6] During this time he made the following statements to Federal Bureau of Narcotics Chief Warner. (1) He asked how the officers had found the laboratory. (2) He told Warner that he "was missing the boat" by not trying LSD and other psychedelic drugs. (3) He stated that he would cooperate with the government. (4) He stated that the government should regulate and license LSD laboratories so that only clean and pure acid would be distributed on the streets.

Chief Warner testified that all of these statements were volunteered by Stanley and were not in response to anyone's questioning. Warner also testified that he asked Stanley if his laboratory was the source of pure LSD, and Stanley replied that "he only distributed or made the purest and cleanest LSD for his family and friends." On these facts, Stanley contends that his convictions should be reversed for a violation of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Stanley's contention can only have merit as regards the single statement given in response to the question of Chief Warner. The other statements were volunteered and clearly do not involve the use of police "interrogation" as considered in *Miranda,* supra, 473–475, 86 S.Ct. 1627–1628. Stanley fails to elaborate on the prejudice resulting from the admission of this single statement. We are convinced that none occurred. The evidence against Stanley was overwhelming, based on the police search and the product of a year's surveillance of the LSD enterprise. Any error that occurred in this non-jury setting in the admission of the single question and answer referred to above, was harmless beyond any doubt. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

Other matters raised by appellants have been considered and found to be without merit.

Finding no error, the judgments are

Affirmed.

---

6. Stanley's detention at 69 La Espiral may have been in response to Stanley's request that the agents take nothing but contraband from the premises.