Kenneth Edward HOPPER, Appellant,

v.

UNITED STATES of America, Appellee.

No. 16191.

United States Court of Appeals Ninth Circuit.

June 24, 1959.

———◆———

Murray Guterson, Seattle, Wash., for appellant.

Charles P. Moriarty, U. S. Atty., Jeremiah M. Long, Asst. U. S. Atty., Seattle, Wash., for appellee.

Before POPE, CHAMBERS, and HAMLEY, Circuit Judges.

HAMLEY, Circuit Judge.

Kenneth Edward Hopper appeals from his conviction on four counts of a five-count indictment charging violation of the narcotics laws.[1] The only question presented on appeal is whether it was error to receive in evidence the narcotics and certain marked currency seized at the time of appellant's arrest.[2] Appellant contends that this evidence was seized as the result of an unlawful arrest and search.

The facts essential to a consideration of this question are as follows: During the early afternoon of March 25, 1958, Hopper met Lawrence Younger, a narcotic addict and the informer in this case, on a Seattle street. They went to a room in the Atlas Hotel. Hopper told Younger that he had five ounces of narcotics for sale at three hundred dollars an ounce. Younger told Hopper that if it was any good he would buy an ounce.

Hopper then gave Younger two capsules of narcotics as samples, which Younger personally used. Younger advised Hopper that it would take a few hours to raise the money to buy an ounce. Hopper then asked Younger to help him sell the other four ounces of narcotics. Younger told Hopper to wait at Hopper's hotel until Younger called him later that day.

At approximately 5:00 p. m. that afternoon, Younger telephoned Hopper and stated that he had located someone who wanted to make a big purchase if the "stuff" was any good. Hopper asked Younger to come to room 304 of the Frye Hotel, where Hopper was staying, and get some samples. Shortly thereafter, Younger went to Hopper's hotel room. Hopper then left his room for two or three minutes and returned with narcotics from which he made up four capsules. Younger did not know where Hopper kept his narcotics, nor did Hopper disclose this information. Hopper gave the four capsules to Younger.

About 6:30 p. m. Younger telephoned Detective Chandler F. Kirschner of the Seattle Police Department narcotic detail, advising him of what had transpired as described above. Kirschner and other police officers involved in the case knew Younger as a narcotics user and a reliable informer. Younger had assisted in a number of cases as a special employee of the Federal Narcotics Bureau in Seattle. Kirschner told Younger to meet Kirschner at the latter's office at 8:00

1. Count 1—receiving and concealing 84 grains of heroin, in violation of 21 U.S. C.A. § 174; count 2—selling 84 grains of heroin, in violation of 26 U.S.C.A. § 4705(a); count 3—selling, dispensing, and distributing 84 grains of heroin, in violation of 26 U.S.C.A. § 4704(a); and count 4—receiving and concealing 233 grains of heroin, in violation of 21 U.S. C.A. § 174. Appellant was sentenced to eleven years on each of counts 1, 2, and 4, the sentences on counts 2 and 4 to run concurrently with count 1. On count 3 imposition of sentence was suspended and appellant was placed on probation for five years to commence after service of the sentences on counts 1, 2, and 4.

2. Appellant made an appropriate and timely pretrial motion for return of the property and suppression of the evidence, which motion was denied after hearing. Appellant also made appropriate objections at the trial to the introduction of this evidence.

p. m. Younger then returned to Hopper's room at the hotel and suggested a meeting at about 8:00 p. m.

At approximately 8:00 p. m. Younger met with Seattle Police Detectives Kirschner and Henaby and Federal Narcotics Agents Dupuis, Gooder, and Hope at an office of the Seattle Police Department. Younger told the officers that any "deal" with Hopper had to be made as soon as possible because Hopper was trying to dispose of his narcotics to another named individual. Younger also told the officers that he did not know where Hopper had his narcotics "planted," and that Hopper had left the room for a few minutes before making up the four capsules.

At the request of the officers, Younger, with Kirschner listening to the conversation, telephoned the Frye Hotel. Younger asked for room 304, but was told that Hopper was in the bar and would be paged. About five minutes later a man answered and said "Hopper speaking." Arrangements were then made by Younger to meet Hopper in the latter's room about 9:30 p. m. The purpose of the meeting was to consummate the proposed sale of an ounce of heroin to Younger.

After the telephone conversation, a plan was formulated by the officers whereby Younger, Hope, and Henaby would go to the Frye Hotel together. The officers would keep Younger under surveillance until he entered Hopper's room. Two or three minutes later, Dupuis, Gooder, and Kirschner would follow the other officers to the hotel. It was part of the plan that Hope and Henaby would remain in a position where they could see Younger enter Hopper's room, but not be seen if someone stepped out of Hopper's room.

Younger was to find out immediately whether there were any narcotics in Hopper's room. If there were none, he was to leave at once. In the event that Younger remained in the room for more than five minutes, the officers would know that Hopper had narcotics inside the room, and that the sale to Younger was taking place there. After making this plan, the officers searched Younger for narcotics and found none. They then provided him with two hundred dollars in identifiable currency.

Younger, Hope, and Henaby then left for the Frye Hotel. Henaby and Hope observed Younger go to room 304, knock on the door, and obtain admittance. It was then about 9:30 p. m. These officers positioned themselves so that they could watch room 304, but could not be seen by anyone who stepped out of that room. At approximately 9:40 p. m., Kirschner, Gooder, and Dupuis joined Hope and Henaby. Since the five-minute period had by that time expired, Henaby and Kirschner took up positions by the door to room 304. They heard Younger talking with someone inside the room. Henaby heard Younger say, "I'll see you at eleven o'clock." [3]

At approximately 10:00 p. m., the door to room 304 opened and Younger came out. He was holding in his left hand a rubber tube containing powder which he gave to Gooder in the hallway immediately outside the door. Hopper was seven or eight feet behind Younger as the latter emerged, and was visible to officers standing outside the door. As Younger came out, Kirschner and Henaby called out to appellant, "You are under arrest, this is the police," and entered the room through the open door. The other officers then entered the room.

Hopper was arrested after a scuffle during which he attempted to throw another rubber tube from the room. It struck Dupuis in the face and the contents fell on the threshold. The two hundred dollars in currency which the officers had given to Younger was found on Hopper's person.

The officers had no warrant of arrest or search warrant in their possession

3. In affidavits filed in opposition to the motion to suppress the evidence, both Kirschner and Henaby stated that they had heard mention of the words "dope," "heroin," and "narcotic." But at the trial they did not so testify.

when they entered the room. Hopper did not give any word or sign assenting to their entry into the room. No chemical test was made of the powder contained in the tube which Younger handed to Gooder before such entry was made.

The three exhibits which appellant asserts were illegally seized and should have been excluded were the rubber tube containing 84 grains of heroin which Younger carried from the room, the rubber tube containing 233 grains of heroin which Hopper tried to throw away, and the two hundred dollars in identifiable money.

■ The Fourth Amendment forbids unreasonable searches and seizures. Evidence obtained in violation of this constitutional provision may not be received in a federal prosecution. Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652. A search of the person of an individual and of the immediately surrounding premises without a search warrant and the seizure of articles found as a result of such a search is not unreasonable if incident to a lawful arrest. United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653.[4]

Appellant argues, however, that the arrest was not lawful because: (1) the officers making the arrest did not then have probable cause to arrest him; (2) if they did have probable cause, a warrant should have been obtained before making the arrest; and (3) entry was made into appellant's room without the officers first giving appellant notice of their authority and stating the purpose for which they demanded admission.

■ In the absence of an applicable federal statute, the law of the state where an arrest without a warrant takes place determines its validity.[5] This arrest was made by police officers of the City of Seattle. There is no federal statute governing arrests of the kind here made. Therefore the Washington law provides the standard by which the arrest of Hopper must stand or fall.

■ Under Washington law an arrest without a warrant is valid only if for a crime committed in the presence of the arresting officer or for a felony of which he had reasonable cause to believe defendant guilty. Johnson v. United States, supra, 333 U.S. at page 15, 68 S.Ct. at page 370.

■ By reason of the arrangement which the police officers had with Younger, the latter's presence in Hopper's hotel room more than five minutes gave them reasonable cause to believe that Hopper had narcotics inside the room and that a sale to Younger was then taking place.[6] The standards provided by the Washington law were thus met and the right to arrest Hopper without a warrant was established.

Johnson v. United States, supra, which also involved an arrest in Washington, is distinguishable. In that case the arresting officer had reasonable cause to believe that a crime was being committed in the hotel room because he could smell the odor of burning opium. But, as the

---

4. In Trupiano v. United States, 334 U.S. 699, 68 S.Ct. 1229, 92 L.Ed. 1663, it was held in effect that search warrants must be procured when "practicable" in a case of search incident to arrest. See, also, McDonald v. United States, 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153. The Trupiano rule was abandoned in United States v. Rabinowitz, supra.

5. Miller v. United States, 357 U.S. 301, 305, 78 S.Ct. 1190, 2 L.Ed.2d 1332; Johnson v. United States, 333 U.S. 10, 15, 68 S.Ct. 367, 92 L.Ed. 436; United States v. Di Re, 332 U.S. 581, 589, 68 S.Ct. 222, 92 L.Ed. 210.

6. There were, of course, many additional circumstances tending to support this belief. Younger was a reliable informant and had told the police of his negotiations with Hopper on the day in question. One of the officers overheard a telephone conversation between Younger and a person who identified himself as Hopper, during the course of which arrangements were made for Younger to meet Hopper at the latter's room at 9:30 p. m. Police officers observed Younger knock on Hopper's hotel door and gain admittance. When Younger came out, he was holding in his hand a rubber tube containing powder.

Government in effect conceded, he did not have probable cause to arrest Anne Johnson until he had entered her room and found her to be the sole occupant. In the instant case the officers, before entering Hopper's room, had reasonable cause to believe that he was inside and was transacting an illegal sale of narcotics.

It may well be, as appellant asserts, that a stronger showing of probable cause must be made where the arrest is made without a warrant and at a domicile than would be the case of an arrest occurring in the open or involving a moving vehicle. However that may be, we find that the showing here was sufficient to satisfy the requirements of Washington law.

Appellant cites several cases in which the arrest or search was made after a suspected substance had been chemically tested and found to be narcotics. In our view, however, these cases do not announce the rule that such a test must be made in order to establish probable cause.

■ The manner of effecting entry to make this arrest was not unlawful under Washington law. It is provided in RCW 10.31.040:

"To make an arrest in criminal actions, the officer may break open any outer or inner door, or windows of a dwelling house or other building, or any other inclosure, if, after notice of his office and purpose, he be refused admittance."

Here there was no forcible entry and the requirements of RCW 10.31.040 are therefore not strictly applicable. Nevertheless, the officers called, "You are under arrest, this is the police," just as they made peaceable entry through an open door. Miller v. United States, 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332, relied upon by appellant on this branch of the case, is inapposite. The officers there made a forcible entry and this was held to be in violation of the law of the District of Columbia under the circumstances of that case.

■ The trial court did not err in receiving in evidence the narcotics and currency seized in connection with Hopper's arrest.

Affirmed.