UNITED STATES of America,
Appellant,

v.

Frank J. PARKER, Appellee.

No. 25141.

United States Court of Appeals,
Ninth Circuit.

June 18, 1970.

Charles L. Kellar (argued), Las Vegas, Nev., for appellant.

James A. Hancock (argued), Asst. U. S. Atty., Bart M. Schouweiler, U. S. Atty., Las Vegas, Nev., for appellee.

Before HAMLIN, ELY and CARTER, Circuit Judges.

HAMLIN, Circuit Judge.

A four-count indictment was returned on July 23, 1968, in the United States District Court for the District of Nevada, charging appellant Frank J. Parker with three violations of 21 U.S.C. § 174 by the sale of specified amounts of heroin on July 12, 1968 [Count One], July 13, 1968 [Count Two], and July 14, 1968 [Count Three], and one violation of 21 U.S.C. § 174 by the facilitation of the transportation and concealment of heroin on July 17, 1968 [Count Four]. On March 20, 1969, the jury returned its

verdict, finding appellant guilty on Counts One and Two, the remaining counts having been dismissed by the government. Appellant was sentenced to 10 years on each count, sentences to run concurrently. He filed a timely notice of appeal to this court which has jurisdiction under 28 U.S.C. §§ 1291, 1294.

Appellant first centends that there was discrimination in the selection of the grand and petit juries in the instant case. Appellant's proof of discrimination consisted solely of showing that the names of potential jurors were drawn at random from the voter registration lists,[1] and that the jurors were selected at random from a wheel containing these names. Appellant also points to a statement by the district judge that he couldn't "recall a grand jury that had a colored man on it; but there may have been." This proof completely fails to sustain the burden, which falls upon appellant, see *e.g.*, Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), of showing a "systematic exclusion of any identifiable group within the community," Bloomer v. United States, 409 F.2d 869, 872 (9th Cir. 1969). The use of voter registration lists as the sole source of the names of potential jurors is not constitutionally invalid, absent a showing of discrimination in the compiling of such voter registration lists. See Grimes v. United States, 391 F.2d 709 (5th Cir.), cert. denied 393 U.S. 825, 89 S.Ct. 87, 21 L.Ed. 2d 96 (1968). As to the petit jury selection process used in the instant case, appellant's proof makes no showing of a "substantial failure to comply with the provisions [of the Jury Selection and Service Act of 1968]", 28 U.S.C. §§ 1867(a), 1867(d).

The proceedings before the grand jury in the instant case were not recorded. Appellant made a timely pretrial motion to have a transcript made, and for *general* discovery of such proceedings. He asserts as error on appeal the denial of this motion. The Federal Rules of Criminal Procedure are permissive on the subject of recording the testimony taken before the grand jury. See Rule 6(d). In Loux v. United States, 389 F.2d 911 (9th Cir.), cert. denied 393 U.S. 867, 89 S.Ct. 151, 21 L. Ed.2d 135 (1968), we held that the failure to record raised no constitutional problems. See also, Jack v. United States, 409 F.2d 522 (9th Cir. 1969); Ingle v. United States, 399 F.2d 690 (9th Cir. 1968). Even assuming *arguendo* that the "particularized need" standard of Dennis v. United States, 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966), applies to a motion to compel recording of grand jury testimony, as distinguished from a motion for discovery of particular portions of grand jury

---

1. Selection under the Plan of the United States District Court for the District of Nevada for the Random Selection of Grand and Petit Jurors, see 28 U.S.C. § 1863, makes reference to voter registration lists as the sole source of names of potential jurors. The mechanics of the selection of the names is, however, different from that used with regard to the grand jury in the instant case, which was impaneled prior to December 22, 1968, the effective date of the Jury Selection and Service Act of 1968, 82 Stat. 54 (1968).

Under the pre-Act procedure, juror qualification questionnaires were sent to 10% of the registered voters within each precinct in Clark County, the particular individuals within each precinct receiving the questionnaires being selected at random. After return of the questionnaires the clerk of the court culled the obviously disqualified and placed the remainder in the jury wheel.

Under the Plan in effect at the time in question, questionnaires were sent to every fourteenth voter on the voter registration lists in Clark, Esmeralda, Lincoln, Nye and White Pine Counties. Exemptions, excuses and qualifications were determined by the District Court with the assistance of the clerk. The remaining names were then placed in the master jury wheel, from which individual grand and petit jury venires were drawn at random.

The Plan was amended on October 17, 1969, to provide for a different method of random selection, but the sole source of names is still the voter registration lists in the various counties.

testimony already recorded, appellant has not made a sufficient showing of "particularized need" in the instant case. See Osborne v. United States, 371 F.2d 913, 918–919 (9th Cir.), cert. denied 387 U.S. 946, 87 S.Ct. 2082, 18 L.Ed.2d 1335 (1967).

■ Appellant next contends that it was error of constitutional dimension [2] to allow into evidence over objection two $20 bills. The serial numbers of these bills had been recorded by narcotics agents prior to their being given to the informant for use in his purchase of heroin from appellant. On appellant's arrest in his home on July 17, 1968, these bills were removed from appellant's wallet which was in his pants' pocket in an adjoining room. One bill was shown to have been used in the July 13 purchase, the other in the July 14 purchase. The trial court denied appellant's objection on the theory that the objection was in the nature of a motion to suppress, whch should have been made prior to which generally required by Rule 41, F.R.Crim.P.

Without regard to the proper practice under Rule 41, we think that the evidence was properly admitted as the fruit of a search incident to a lawful arrest. See Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947) and United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950). Although the United States Supreme Court ruled on June 23, 1969, in Chimel v. California, 395 U.S. 752, 768, 89 S.Ct. 2034, 2043, 23 L.Ed.2d 685 (1969), that Harris and Rabinowitz "are no longer to be followed," this court has given Chimel purely prospective application, Williams v. United States, 418 F.2d 159 (9th Cir. 1969), cert. granted, 397 U.S. 986, 90 S.Ct. 1120, 25 L.Ed.2d 394 (1970), and Harris and Rabinowitz remain control-

ling in the circumstances of this case. Appellant seeks to distinguish both Harris and Rabinowitz on the ground that here the officers had both arrest and search warrants and the search warrant did not particularly describe the two $20 bills. This distinction is without significance. Marron v. United States, 275 U.S. 192, 48 S.Ct. 74, 72 L.Ed. 231 (1927). Cf. Woo Lai Chun v. United States, 274 F.2d 708 (9th Cir. 1960). The two bills seized were fruit of the crimes, cf., United States v. Burkeen, 350 F.2d 261 (6th Cir.), cert. denied sub nom. Matlock v. United States, 382 U.S. 966, 86 S.Ct. 457, 15 L.Ed. 369 (1965), and not "mere evidence" as contended by appellant. In any event, the distinction between "mere evidence" and "fruits" of crime no longer has any constitutional significance. Warden v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967).

The two $20 bills were also properly admitted on the theory that they were seized in the course of lawfully executing the search warrant even though the bills were not particularly described therein. See Porter v. United States, 335 F.2d 602 (9th Cir. 1964), cert. denied 379 U.S. 983, 85 S.Ct. 695, 13 L.Ed.2d 574 (1965); Louie v. United States, 426 F.2d 1398 (9th Cir. 1970). See also Gurleski v. United States, 405 F.2d 253 (5th Cir. 1968), cert. denied sub nom. Smith v. United States, 395 U.S. 977, 89 S.Ct. 2127, 23 L.Ed.2d 765 (1969).

■ Knowledge of the illegal importation of heroin is an essential element of the crime created by section 174. See Harris v. United States, 359 U.S. 19, 23, 79 S.Ct. 560, 3 L.Ed.2d 597 (1959). In the instant case there was no direct evidence of appellant's knowledge of the prior illegal importation of the heroin sold to the informant, and the

2. Marked money used in the purchase of illegal narcotics is generally admissible as relevant, material and competent evidence in section 174 purchase cases. See, e. g., Hopper v. United States, 267 F.2d 904 (9th Cir. 1959); Sanchez v. United States, 311 F.2d 327 (9th Cir. 1962), cert. denied 373 U.S. 949, 83 S.Ct. 1678, 10 L.Ed.2d 704 (1963); United States v. Torres, 354 F.2d 633 (7th Cir. 1966).

jury was instructed[3] in accordance with the second paragraph of section 174.[4] Appellant made no objection to the instructions as given, see Rule 30, F.R. Crim.P., and the giving of instructions based on the statute is not error, constitutional or otherwise, in heroin cases. Turner v. United States, 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970). Notwithstanding appellant's contention to the contrary, appellant's guilt was properly found by the jury even though there was no direct evidence of illegal importation or knowledge thereof. *Turner, supra,* at 408–418, 90 S.Ct. 642.

■ Appellant contends that it was error for the court to submit the case to the jury where the direct evidence of the crimes was produced through the testimony of a drug addict informant. The fact that the informer was a drug addict does not disqualify him as a witness, and his credibility was for the jury to determine. See Proffit v. United States, 316 F.2d 705 (9th Cir. 1963).

Appellant's final contention that the trial judge lacked impartiality has absolutely no merit, and an examination of the record so demonstrates.

Judgment affirmed.

3. "Now, whenever a defendant is shown to have or to have had possession of a narcotic drug, such possession is sufficient evidence to authorize a conviction unless the defendant explains the possession to the jury's satisfaction.

"However, this rule does not change the fundamental rule that the accused is presumed innocent until proven guilty beyond a reasonable doubt. Nor does it impose upon the accused any burden or duty to produce proof that the narcotic drug was unlawfully imported, or any other evidence. As previously stated, the burden is always upon the prosecution to prove beyond a reasonable doubt every essential element of the crime charged.

"What this rule does mean is that when, upon trial for violation thereof, the jury should find beyond a reasonable doubt that the accused has had possession of a narcotic drug as charged, the fact of such possession alone, unless explained to the satisfaction of the jury by the evidence in the case, permits—but does not compel; emphasize 'permits'—the jury to draw the inference and find that the narcotic drug was imported or brought into the United States contrary to law; and to draw the further inference and find that the accused had knowledge that the narcotic drug was imported or brought in contrary to law.

"In connection with any explanation offered for possession of a narcotic drug, you are reminded that, in the exercise of Constitutional rights, the accused need not testify. Possession may be explained to the satisfaction ·of the jury through other circumstances, and other evidence in the case, independent of the testimony of the accused."

4. "Whenever on trial for a violation of this section the defendant is shown to have or to have had possession of the narcotic drug, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury."