UNITED STATES of America,
Plaintiff-Appellee,

v.

Leon Dudley NOAH, Defendant-
Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Richard R. STUART, Defendant-Appel-
lant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Willie WILLINGHAM and Abraham
Griffin, Defendants-Appellants.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Virgil METCALF, Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Humphrey ROSS, Defendant-Appellant.

Nos. 72-1807 to 72-1810, 72-1865.

United States Court of Appeals,
Ninth Circuit.

March 2, 1973.

Rehearing Denied April 25, 1973.

690

Wesley G. Hohlbein (argued), Seattle, Wash., Jack Steinberg (argued), Seattle, Wash., Murray Guterson (argued), Seattle, Wash., Robert C. Mussehl (argued), Seattle, Wash., Arthur Sherman (argued), Marks, Sherman & Schwartz, Beverly Hills, Cal., B. Gray Warner, Warner, Pierce & Peden, Seattle, Wash., for defendants-appellants.

Charles Pinnell, Asst. U. S. Atty. (argued), Tom Russell, Asst. U. S.

Atty., Stan Pitkin, U. S. Atty., Seattle, Wash., for plaintiff-appellee.

Before BARNES and CHOY, Circuit Judges, and JAMESON,[*] District Judge.

CHOY, Circuit Judge:

Appellants were indicted on 18 counts [1] for trafficking in heroin and cocaine and conspiring to do so. Two of the counts were for possession of narcotics with intent to distribute, based on the seizure of narcotics from the residence of two of the appellants. The other fourteen substantive counts were for twelve sales by various members of the conspiracy to a government undercover agent.[2] These sales took place between March 5, 1971 and July 28, 1971. Two separate counts of conspiracy were charged.[3]

All six appellants were tried jointly by a jury and found guilty on all counts as charged. All six have filed timely appeals. We affirm as to all with directions and one of Ross's $7,500 fines is stricken. We consider each appeal separately.

### LEON DUDLEY NOAH

1. Missing witness instruction.

Noah asked that the court give an instruction to the effect that since the government did not produce a certain witness there is a presumption that her testimony would have been unfavorable to the government's case. The court refused to give the instruction and Noah appeals that ruling.

The failure of a party to produce a material witness who could elucidate matters under investigation gives rise to a presumption that the testimony of that witness would be unfavorable to that party if 'the witness is peculiarly within the party's control. World Wide Automatic Archery, Inc. v. United States, 356 F.2d 834, 837 (9th Cir. 1966). Here the government did not call as a witness a paid informer who was instrumental in the government's investigation. Noah asserted that the government entrapped him and the missing witness could have elucidated this aspect of the case. We do not think that the trial court erred in not giving the instruction.

The record does not indicate that this witness was peculiarly within the power of the government. The issue of her availability was a question of fact for the trial court to decide. While the informer was at one time associated with the government, there was a break in the relationship. The witness left the state about three months before appellant's indictment and five months before trial and no one knew of her whereabouts. She was equally unavailable to both Noah and the government. The instruction was properly rejected as not warranted by the facts of this case.[4]

---

[*] Honorable William J. Jameson, Senior United States District Judge, District of Montana, sitting by designation.

1. The original indictment filed on July 28, 1971 contained 26 counts. A trial was conducted, but because of the prejudicial testimony of a government witness a mistrial was declared. The case was consolidated and 8 substantive counts were dropped by the government before the commencement of the second trial.

2. Two of the sales involved both heroin and cocaine and for these sales there are four instead of two counts. All of the other sales involved only heroin.

3. Two conspiracies were charged instead of one because pending the investigation a new federal narcotics statute went into effect.

4. We note that there is an additional aspect to the problem of the witness's unavailability. The government helped her leave the jurisdiction since they provided her with a train ticket. The government should not cause a prospective witness to leave the jurisdiction so that he would not be available to testify. In this case, however, we find nothing improper since there was no evidence of such sinister motivation on the part of the government. The witness departed five months before the trial (three months before the end of the investigation) and it appears that the witness herself wanted to leave so that she could start a new life in another city.

United States v. Makekau, 429 F.2d 1403 (9th Cir.), cert. denied 400 U.S. 904, 91 S.Ct. 143, 27 L.Ed.2d 141 (1970).

2. Entrapment instructions.

■ Noah claims that the court erred by instructing the jury that the defense of entrapment is applicable only when a person has no previous intent or purpose to violate the law and has a readiness and willingness to break the law. Noah maintains that since he was a drug addict he should be entitled to a special entrapment instruction. The law is clear that if a predisposition to break the law exists before the government makes any offer, the entrapment defense does not apply.[5] United States v. Griffin, 434 F.2d 978 (9th Cir. 1970), cert. denied 402 U.S. 995, 91 S.Ct. 2170, 29 L.Ed.2d 160 (1971).

3. Dismissal of part of the indictment.

■ Noah contends that his Fifth Amendment rights were violated when the court, pursuant to F.R.Crim.P. 48(a) dismissed five substantive counts from the indictment. Noah claims that by eliminating the substantive counts the theory of the original indictment was changed without the indictment being resubmitted to the grand jury.

We see no merit in Noah's contention. He was in no way prejudiced by the elimination of part of the indictment. An indictment may not be broadened except by the grand jury. Stirone v. United States, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960). Here the indictment was not expanded, but consolidated and some of the charges were eliminated. There is no Fifth Amendment prohibition against this.

4. Prejudicial publicity.

■ The day after the prosecution rested, a newspaper article appeared in a local paper. The headline read, "Dope Case Witness Refuses to Testify." The article referred to a government witness who the government claimed was too sick to testify.[6] The court asked the jurors whether any of them had either read the article or seen the headline. Only one juror admitted that he had read the headline. This juror was examined at length to determine if he had been influenced by the article. The court decided that the juror could still remain fair and impartial.

During the examination, however, this juror said that probably half a dozen other jurors also saw the headline. The defense was given an opportunity to question the other jurors, but declined to do so and moved for a mistrial instead. That motion was denied. We affirm the ruling.

"The trial judge has a large discretion in ruling on the issue of prejudice resulting from the reading by jurors of news articles concerning the trial. Holt v. United States, 218 U.S. 245, 251 [, 31 S.Ct. 2, 6, 54 L.Ed. 1021]. Generalizations beyond that statement are not profitable, because each case must turn on its special facts." Marshall v. United States, 360 U.S. 310, 312, 79 S.Ct. 1171, 1173, 3 L.Ed.2d 1250 (1959). Here, all that was established was that one juror admitted reading the headline and he thought that others had also seen the headline. The headline itself was not prejudicial. It simply stated that a witness had refused to testify. The jury was already aware that the witness had not appeared after she was called as a witness.

5. We also note that the defense of entrapment is not available to either Noah or Stuart. The rule in this circuit requires that the defendant admit the criminal act before he can successfully assert that he was entrapped. United States v. Azadian, 436 F.2d 81, 83 (9th Cir. 1971). Although this rule has been criticized, it is still the law in this circuit. Moreover, the instant case does not present such an intolerable degree of government participation in the criminal enterprise, to come within the limited exception to the prevailing rule. See United States v. Granger, 475 F.2d 1022 (9th Cir. 1973).

6. The gist of the article was that the witness had refused to testify not because she was sick but because she was afraid she would be harmed if she did testify.

While the article itself was potentially prejudicial, there is no evidence that anyone read it. The defense was given an opportunity to question the jury. Unless we assume that each juror purposely lied to the court, we cannot find that the publicity prejudiced the jury against the appellants. The burden to show that a defendant had been unfairly treated is on the defendant. Marshall v. United States, 355 F.2d 999, 1007 (9th Cir.), cert. denied 385 U.S. 815, 87 S.Ct. 34, 17 L.Ed.2d 54 (1966). Here that burden has not been met.

5. Habeas corpus petition.

Pending this appeal, Noah filed a motion for a writ of habeas corpus. He contends that the method used to select the jury violated the Fifth and Sixth Amendments. Noah notes that of the approximately 200 odd veniremen only two were non-whites and that non-whites constitute 5.9% of the population of the Western District of Washington.

█ Since an appellate proceeding is pending, we have the power to issue a writ of habeas corpus. Adams v. United States ex rel. McCann, 317 U.S. 269, 63 S.Ct. 236, 87 L.Ed. 268 (1942). But Noah has failed to sustain the burden of proof of showing a systematic exclusion of non-whites. Swain v. Alabama, 380 · U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965); United States v. Parker, 428 F.2d 488 (9th Cir.), cert. denied 400 U. S. 910, 91 S.Ct. 155, 27 L.Ed.2d 150 (1970). "The use of voter registration lists as the sole source of the names of potential jurors is not constitutionally invalid, absent a showing of discrimination in the compiling of such voter registration lists." *Parker, supra* at 489.

Noah concedes that there was no conscious effort to exclude non-whites, but he argues that discrimination is inherent in the use of voter lists. Noah, however, has failed to present sufficient evidence to prove that there is in fact a sufficiently large under-representation of

non-whites. Bloomer v. United States, 409 F.2d 869 (9th Cir. 1969).

The motion for a writ of habeas corpus is denied.

## RICHARD STUART

1. Improper counts.

Stuart contends that one of his two conspiracy convictions should be reversed. The indictment contained two conspiracy counts. The first one charged a conspiracy to violate 21 U.S.C. § 174 between March 1, 1971 and April 30, 1971; the second charged conspiracy to violate 21 U.S.C. § 841(a) between May 1, 1971 and July 28, 1971. Two conspiracy counts were charged because of the conspiracy statutes themselves although there was but one continuing conspiracy. On May 1, 1971, a new statute, the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. §§ 801–966, took effect, replacing other federal narcotics laws. For activities preceding May 1, appellant was charged under the old statute, and for activities after May 1, he was charged with conspiring under the new statute.

█ Presenting evidence of violations of different statutes does not create separate conspiracies out of one conspiracy. The gist of the crime of conspiracy is an agreement to commit unlawful acts. "The one agreement cannot be taken to be several agreements and hence several conspiracies because it envisages the violation of several statutes rather than one." Braverman v. United States, 317 U.S. 49, 53, 63 S.Ct. 99, 102, 87 L.Ed. 23 (1942).

█ No evidence was advanced at the trial to suggest that the defendant and his co-conspirators formed a new agreement, made new plans, or developed a new purpose after the new federal law went into effect. Since there was only one agreement there could be only one conspiracy conviction. Therefore, we vacate Stuart's conviction of the first count and order that it be dismissed.[7]

7. In the light of our disposition of the case we need not reach this issue, but we uphold the least severe of the convictions.

Brown v. United States, 112 U.S.App. D.C. 57, 299 F.2d 438, 440 (1962).

■ Even though we vacate one of the conspiracy convictions, this does not alter Stuart's sentence. Stuart received a thirty-year sentence on the first conspiracy count and a fifteen-year sentence on the second conspiracy count. In addition, he received five other thirty-year sentences and five other fifteen-year sentences for participating in ten illegal narcotics sales. All of the sentences are concurrent. We can say with fair assurance that the improper conspiracy conviction did not in any way influence the other convictions. Kotteakos v. United States, 328 U.S. 750, 764–765, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946). There was clear evidence that Stuart had participated in several sales.

Stuart also maintains that two of the substantive convictions were improper. He contends that it was improper to charge a separate count for the sale of heroin and cocaine. We need not reach the merits of this issue because even if we reversed these two convictions, the validity of the other concurrent sentences would not be affected. Hirabayashi v. United States, 320 U.S. 81, 63 S.Ct. 1375, 87 L.Ed. 1774 (1943); United States v. Munñs, 457 F.2d 271, 274 (9th Cir. 1972).

2. Improperly admitted evidence.

■ Stuart contends that he should be acquitted on all counts because the government failed to prove that the heroin tested by its chemists was the same substance sold to the government. This contention has no merit. First, no objection was made at the time the evidence was admitted. On this fact alone we could affirm. Scott v. United States, 115 U.S.App.D.C. 208, 317 F.2d 908 (1963). Second, ample evidence was adduced during the trial to enable the jury to conclude that the narcotics purchased from Stuart were the same as the exhibits admitted into evidence. Barquera v. California, 374 F.2d 177 (9th Cir. 1967); United States v. Baca, 444 F.2d 1292 (10th Cir.), cert. denied 404 U.S.

979, 92 S.Ct. 347, 30 L.Ed.2d 294 (1971).

3. Entrapment instructions.

■ Stuart maintains that the court's instructions on entrapment were erroneous because they were ambiguous and they did not clearly explain who had the burden of proof. If the instructions were vague or ambiguous that would be grounds for reversal. Notaro v. United States, 363 F.2d 169 (9th Cir. 1966). But the instructions in the case at bar were not defective. In United States v. Griffin, 434 F.2d 978, 981 (9th Cir. 1970), cert. denied 402 U.S. 995, 91 S.Ct. 2170, 29 L.Ed.2d 160 (1971), we approved exactly the same instructions.[8]

### WILLIE WILLINGHAM and ABRAHAM GRIFFIN

1. Conspiracy conviction.

Willingham and Griffin contend that their convictions for conspiring with Ross and Stuart after May 1 must be reversed because there was no evidence that two conspiracies existed. Griffin also contends that there was insufficient evidence to support his conviction.

■ Willingham and Griffin were named in but one conspiracy count, unlike Stuart and Ross. The government concedes that the evidence showed only one pattern of conspiratorial activity by the appellants from March through July 1971, but because of the changes in the law they elected to prosecute Willingham and Griffin under the new law. The evidence of their participation in the conspiracy surfaced after the change in the law. They were indicted and convicted on only one conspiracy charge. Under these circumstances, and in light of the fact that the penalties under the new statute are smaller, we see nothing improper or prejudicial to them in the government's separation of the illegal activities.

■ We also affirm Griffin's conspiracy conviction. On appeal the evidence is viewed in the light most favor-

---

8. See note 5, *supra.*

able to the government. Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); United States v. Magana, 453 F.2d 414 (9th Cir. 1972). While there was no evidence that Griffin directly participated in any of the illegal sales, there was sufficient evidence to sustain a finding by the jury that Griffin was a member of the conspiracy.

Griffin's home was used as a stash for the drugs and the site where the drugs were cut into retail quantities. Moreover, when Griffin was arrested 16 balloons of heroin were discovered in his bedroom. Paraphernalia for both diluting and packaging heroin was found in various common areas of the house. The jury rejected Griffin's defense that he was a mere bystander. Testimonial evidence also supports the conviction. United States v. Stanley, 427 F.2d 1066, 1070 (9th Cir. 1970), cert. denied 404 U.S. 996, 92 S.Ct. 542, 30 L.Ed.2d 548 (1971).

## VIRGIL METCALF

### 1. Challenge to the jury.

 Metcalf contends that the Jury Selection Plan for the Western District of Washington adopted pursuant to the Jury Selection and Service Act of 1968, 28 U.S.C. §§ 1861–1871 does not comply with the policies set forth in sections 1861–1863.[9] We do not reach the merits of this objection because Metcalf failed to make a timely challenge as required by 28 U.S.C. § 1867.[10]

### 2. Fifth amendment privilege.

During his closing argument, the prosecutor commented:

"In my opinion what has happened is that the defense has collapsed, because of all the six defendants before you not one of them has brought one witness in to deny that anything that we have alleged happened in terms of the substantive sales that we have told you about.

Mr. Noah brought in no witnesses to deny that he participated in the sales. Mr. Stuart brought in no witnesses to deny that he participated in the sales."

At this point the court interrupted the prosecutor and admonished the jury that the burden of proof was on the prosecution to establish guilt, not on the defendants to prove innocence, and that the defendants had no burden to prove anything. Later the court instructed the jury that the prosecutor's comments were improper and they should not be considered.

Metcalf contends that the prosecutor's comments infringed his Fifth Amendment privilege and violated the doctrine of Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), and that neither the court's admonition nor the later instruction rendered the error harmless.

The comments in this case are quite different from a specific comment on the defendant's failure to take the stand. "[W]here the prosecutor confines himself to arguing the strength of his case

---

9. Although we have not reached the merits, we note that objections similar to those raised in this case have been rejected by this court. United States v. Ross, 468 F. 2d 1213 (9th Cir. 1972) ; United States v. Ware, 473 F.2d 530 (9th Cir. 1973).

10. 28 U.S.C. § 1867 reads in part:
 (a) In criminal cases, before the voir dire examination begins, or within seven days after the defendant discovered or could have discovered, by the exercise of diligence, the grounds therefor, whichever is earlier, the defendant may move to dismiss the indictment or stay the

proceedings against him on the ground of substantial failure to comply with the provisions of this title in selecting the grand or petit jury.

 . . . . .

 (e) The procedures prescribed by this section shall be the exclusive means by which a person accused of a Federal Crime, the Attorney General of the United States or a party in a civil case may challenge any jury on the ground that such jury was not selected in conformity with the provisions of this title.

by stressing the credibility and lack of contradiction of his witnesses, we will not be astute to find in this a veiled comment on the defendant's failure to testify even if in practical fact, although not in theory, no one else could controvert them." United States ex rel. Leak v. Follette, 418 F.2d 1266, 1270 (2nd Cir. 1969), cert. denied 397 U.S. 1050, 90 S.Ct. 1388, 25 L.Ed.2d 665 (1970); accord, United States v. Lepiscopo, 458 F.2d 977 (10th Cir. 1972).

Here the disputed comments were specifically directed to the lack of contradictory witnesses and contained no explicit reference to the failure of the appellants to testify. We do not think that it focused attention on their failure to testify. The trial judge understood the comment to be directed at the weight of the evidence because in his correction he instructed the jury as to the burden of proof, not the Fifth Amendment rights of the appellants.[11]

Even if we found the comment impermissible, it was harmless error. The comment by the prosecutor was brief, composed of only three sentences. The silence of the appellants was not mentioned to the jury. The trial judge immediately interrupted and properly instructed the jury as to the burden of proof. Any impropriety was harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); Milton v. Wainwright, 407 U.S. 371, 92 S.Ct. 2174, 33 L.Ed.2d 1 (1972).

## HUMPHREY ROSS

1. Insufficiency of the evidence.

On appeal the evidence is viewed in the light most favorable to the government. *Glasser, supra; Magana, supra.* Ample evidence sustains Ross's conviction. Although Ross never directly sold any narcotics, there was sufficient evidence that he actively assisted in the completion of two illegal sales. Ross

drove Stuart to the place where the sales were completed and there was evidence that Ross supplied Stuart with the heroin used in the sales.

2. Denial of the motion for severance.

Ross moved for a separate trial pursuant to Rule 14, F.R.Crim.P., on the ground that if tried with his co-defendants he would be denied supposedly exculpatory testimony from two of them. The trial judge ruled that Ross failed to show the prejudice required by Rule 14 for a severance. The ruling will not be reversed absent a clear abuse of discretion. United States v. Figueroa-Paz, 468 F.2d 1055 (9th Cir. 1972); Daut v. United States, 405 F.2d 312, 314 (9th Cir. 1968), cert. denied 402 U.S. 945, 91 S.Ct. 1624, 29 L.Ed.2d 114 (1971).

Ross made no affirmative showing that the two co-defendants would be willing to testify for him in a separate trial. When there has been an insufficient showing that a co-defendant would actually testify at a severed trial, the district court has not abused its discretion by refusing to grant a motion to sever. United States v. Thomas, 453 F.2d 141 (9th Cir. 1971), cert. denied 405 U.S. 975, 92 S.Ct. 1195, 31 L.Ed.2d 249 (1972); Fields v. United States, 408 F.2d 885 (5th Cir. 1969).

Ross also asserts that his defense was prejudiced by his joinder with others who had sold narcotics directly to government agents. The burden of proving prejudice is a difficult one, and the ruling of the trial judge will rarely be disturbed on review. United States v. DeSapio, 435 F.2d 272, 280 (2nd Cir. 1970), cert. denied 402 U.S. 999, 91 S.Ct. 2170, 29 L.Ed.2d 166 (1971). Again, we find no abuse of discretion.

3. Prejudicial publicity.

This argument has already been considered and rejected. See part 4 of the Noah opinion, *supra.*

---

11. While we think the comment was ill-advised, it was not of such a character that the jury would naturally and necessarily take it to refer to the appellant's failure to testify. United States v. Hawk Wing, 459 F.2d 428, 430 (8th Cir. 1972).

### 4. Fifth amendment privilege.

This argument has already been considered and rejected. See part 2 of the Metcalf opinion, *supra*.

### 5. Instructions.

■ Ross asserts that the court erred when it refused to give the jury his requested instruction on conspiracy.[12] There is no requirement that any specific instruction must be accepted. It is, however, reversible error not to instruct as to defendants' theory of the case if the record contains evidentiary support for the theory and the theory is supported by law. Perkins v. United States, 315 F.2d 120, 124 (9th Cir.), cert. denied 375 U.S. 916, 84 S.Ct. 201, 11 L.Ed.2d 155 (1963).

■ Ross contends that the instructions given failed to allow for the possibility that Ross might be acquainted with the members of the conspiracy and still not be a co-conspirator because he had no financial stake in the success of the conspiracy. Ross is incorrect in his assumption that each conspirator must have a financial stake in the venture. All that is required is that he not be indifferent to its outcome. United States v. McKnight, 253 F.2d 817 (2nd Cir. 1958).

■ The instructions actually given state that the defendant must have willfully participated with the intent to advance some object of the conspiracy, and that mere similarity of conduct or association does not establish a conspiracy. These instructions adequately presented defendant's theory of the case.

### 6. Peremptory challenge.

■ During the selection of the jury the government excused the only black member of the jury panel. Ross, a black, contends that this prejudiced his case. Since there is no evidence of any purposeful discrimination, there is no basis for Ross's objection. *Swain, supra* 380 U.S. at 221, 85 S.Ct. 824. A criminal defendant has no constitutional right to a proportionate number of his race or ethnic group on the jury that tries him. United States v. Gonzalez, 456 F.2d 1067, 1068 (9th Cir. 1972).

### 7. Conspiracy conviction.

■ Ross does not raise this issue, but we note that like Stuart he was also convicted on two conspiracy convictions. As in Stuart's case we vacate the conviction on the first conspiracy count and order that it be dismissed. Like Stuart this does not affect Ross's sentence since he also received other similar concurrent sentences. These other convictions are not tainted by the improper conspiracy conviction.

However, in addition to receiving terms of imprisonment, Ross was also fined $7,500 for each of his four convictions. Since one of the convictions is invalid, one $7,500 fine is dismissed.

The judgments of conviction, and sentences of all appellants are affirmed, except that the convictions of Stuart and Ross on the first conspiracy count for violation of 21 U.S.C. § 841(a) are vacated and ordered dismissed, and one of the $7,500 fines levied on Ross is stricken.

---

12. The rejected instruction read:
"The mere knowledge, approval or acquiescence in the object or purpose of a conspiracy by the defendant is insufficient to convict inasmuch as the accused must in some sense promote the venture himself, make it his own, or have a stake in its outcome, before he is guilty as a 'conspirator' and/or 'abettor'."