**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Thomas Nicholas MAROTTA, Defendant-Appellant.**

**No. 75–1264.**

United States Court of Appeals, Ninth Circuit.

June 6, 1975.

Rehearing Denied Sept. 8, 1975.

---

6. Cal.Civ.Code § 4370 (West Supp. 1975) became effective on July 6, 1970.

Robert J. Hirsh (argued), Tucson, Ariz., for defendant-appellant.

Irma E. Dirst, Asst. U. S. Atty. (argued), Tucson, Ariz., for plaintiff-appellee.

## OPINION

Before TRASK and WALLACE, Circuit Judges, and RENFREW,* District Judge.

PER CURIAM:

Appellant appeals from his convictions for conspiring to possess with intent to distribute approximately ninety-nine kilo bricks of marijuana, in violation of 21 U.S.C. § 846, and for conspiring to import the same marijuana into the United States from Mexico, in violation of 21 U.S.C. § 963. Appellant was sentenced to three years' imprisonment, three years' special parole, and a $3,000 fine on each count, the prison terms to be served

District of California, sitting by designation.

consecutively. Imposition of imprisonment was suspended and appellant placed on probation for five years, conditioned upon confinement for one hundred eighty days. Appellant urges three errors on appeal: (1) the continuing of the trial in his absence, (2) insufficiency of the evidence, and (3) conviction on two counts of conspiracy when only one conspiracy existed. For the reasons stated below, we affirm appellant's convictions on both counts.

 Appellant's first contention on appeal is that the district court erred in continuing the trial in his absence. Appellant on bail was present at the first day of trial, at the end of which a recess of two days was ordered by the court. When trial resumed, appellant did not appear, although his attorney had spoken with him the previous day and had expected to meet with his client that morning. After considering and rejecting the idea of declaring a mistrial, the court found that appellant's absence was voluntary and elected to proceed under Rule 43 of the Federal Rules of Criminal Procedure, which reads in pertinent part:

> "In prosecutions for offenses not punishable by death, the defendant's voluntary absence after the trial has been commenced in his presence shall not prevent continuing the trial to and including the return of the verdict."

All testimony having been heard the first day, the trial resumed with arguments of counsel, and the jury proceeded to find appellant guilty as charged in both counts.

Appellant argues that before his absence can operate as a waiver of his Sixth Amendment rights to be present at trial, to testify in his own behalf, and to confront the witnesses against him, it must be shown to have been both knowing and voluntary, citing *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). Appellant claims that his waiver was not knowing because it was not demonstrated that he knew or had been expressly warned that the trial would continue in his absence and foreclose his constitutional rights.

In rejecting this identical contention the Supreme Court has stated:

> "It is wholly incredible to suggest that petitioner, who was at liberty on bail, had attended the opening session of his trial, and had a duty to be present at the trial, see *Stack v. Boyle*, 342 U.S. 1, 4–5 [72 S.Ct. 1, 96 L.Ed. 3] (1951), entertained any doubts about his right to be present at every stage of his trial. It seems equally incredible to us, as it did to the Court of Appeals, 'that a defendant who flees from a court room in the midst of a trial—where judge, jury, witnesses and lawyers are present and ready to continue—would not know that as a consequence the trial could continue in his absence.'" *Taylor v. United States*, 414 U.S. 17, 20, 94 S.Ct. 194, 196, 38 L.Ed.2d 174 (1973).

Appellant was present when the jury was instructed to return after two days and also when counsel were directed to appear thirty minutes before the jury. He had spoken with counsel the day before trial was to reconvene. Appellant is attempting to impose the stringent safeguards evolved in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and *Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed. 747 (1970), in a case where the factors which led to those decisions are wholly lacking. The Court of Appeals for the First Circuit distinguished those cases from a factual situation similar to the instant case, thusly:

> "A defendant free on bail, and thus not in custody, is not subject to any direct coercion to waive his right to be present at his trial. Nor might a defendant free on bail be led to believe that he could gain anything, certainly not favor with the authorities, by absenting himself from his own trial." *United States v. Taylor*, 478 F.2d 689, 692 (1st Cir. 1973), *aff'd*, 414 U.S. 17, 94 S.Ct. 194, 38 L.Ed.2d 174 (1973).

Indeed, it is well established that "[t]he right to release before trial is conditioned upon the accused's giving adequate assurance that he will stand trial

and submit to sentence if found guilty." *Stack v. Boyle*, 342 U.S. 1, 4, 72 S.Ct. 1, 3, 96 L.Ed. 3 (1951). There is simply no sound policy reason for presuming the appellant here to be ignorant of the obvious consequences of a voluntary failure to appear at his own trial.

Where, as here, appellant was present at trial, knew the date the trial was to resume and there was no evidence to suggest an enforced absence, it was not an abuse of discretion for the trial court to find the absence voluntary and proceed with trial. While the government always has the burden of proving that a defendant knowingly waived his constitutional rights, under the circumstances here appellant has the burden of going forward and offering evidence to refute the finding of the trial court. Appellant, who spent four years in Canada and Costa Rica, is understandably loath to contend that his absence was anything but an intentional interruption of the orderly process of justice. This court has no interest in providing criminal defendants who can elude capture long enough with their option of trial on the original offense or on bail-jumping.[1]

■ There is no merit to appellant's contention that there was insufficient evidence to convict him of conspiracy. The "slight evidence" required to link him to the well-proved scheme to purchase marijuana, *Fox v. United States*, 381 F.2d 125, 129 (9th Cir. 1967), was more than supplied by testimony at trial concerning appellant's participation in planning sessions, rental of rooms in which meetings of co-conspirators took place, and his agreement to cross the border to take money to the suppliers of the marijuana.

■ Appellant next argues that it is not permissible to convict him on two counts of conspiracy when in fact only one conspiracy existed. While *Braver-*

*man v. United States*, 317 U.S. 49, 63 S.Ct. 99, 87 L.Ed. 23 (1942), held that a single agreement to commit several unlawful acts could not be punished by multiple convictions under the general conspiracy statute, the court distinguished the case before it from a situation, such as here, where a single act violates two statutes. 317 U.S. 54, 63 S.Ct. 99. At oral argument appellant cited two additional authorities, *United States v. Noah*, 475 F.2d 688 (9th Cir. 1973), and *United States v. Mori*, 444 F.2d 240 (5th Cir. 1971). Neither case supports his position.

This court stated in *United States v. Noah*, 475 F.2d 688 (9th Cir. 1973), that "[p]resenting evidence of violations of different statutes does not create separate conspiracies out of one conspiracy." 475 F.2d at 693. However, in *Noah*, a several months long continuing conspiracy had been charged under two statutes only because during its tenure one federal law replaced another which was repealed.[2] Had Congress intended the new statute to constitute a separate offense, it would not have repealed the former statute. Here the Congressional intent is unmistakable in that there are two separate and distinct offenses defined.

In *United States v. Mori*, 444 F.2d 240 (5th Cir. 1971), defendant was found guilty of violation of 21 U.S.C. § 174, conspiracy to import a narcotic drug, and 18 U.S.C. § 371, the general conspiracy statute, and sentenced on each count. The Court of Appeals vacated the sentences and remanded the case for its imposition of sentence on one count. We adhere to the reasoning in *Mori* in so far as it holds that where specific conspiracy statutes have been enacted, Congress intended to replace and not supplement the general conspiracy statute. However, *Mori* does not aid appellant here who was convicted of violating two specific conspiracy statutes.

---

1. Bail-jumping carries a maximum penalty of five years and $5,000, 18 U.S.C. § 3150. Each of the offenses with which appellant was charged carries a maximum penalty of fifteen years and $25,000, 21 U.S.C. § 846, § 841(b)(1)(A), § 963, and § 960(b)(1).

2. Former 21 U.S.C. § 174 which defined both substantive and inchoate narcotics offenses was repealed effective May 1, 1971, and replaced by a number of more specific sections, including those under which appellant was convicted.

Here evidence of a single chain of events led a jury to find that appellant had violated both 21 U.S.C. § 846, conspiracy to possess with intent to distribute, and 21 U.S.C. § 963, conspiracy to import. In *Gore v. United States*, 357 U.S. 386, 78 S.Ct. 1280, 2 L.Ed.2d 1405 (1958), the Supreme Court affirmed the conviction below of a defendant who was found guilty of violating three separate statutes by a single narcotics sale on each of two days. Consecutive sentences were imposed for each of the three violations for each day with the term for each day's sale to run concurrently with that for the other day's sale. The Court noted that:

> "The fact that an offender violates by a single transaction several regulatory controls devised by Congress as means for dealing with a social evil as deleterious as it is difficult to combat does not make the several different regulatory controls single and identic. * * *
>
> * * * If the legislation reveals anything, it reveals the determination of Congress to turn the screw of the criminal machinery—detection, prosecution and punishment—tighter and tighter." 357 U.S. at 389–390, 78 S.Ct. at 1283.

The validity of appellant's convictions does not turn on whether there was one conspiracy or two. Congress has defined the evils to be prohibited as conspiracies with specified criminal objects. Granting that appellant was engaged in a single conspiracy with dual criminal objects, this court finds that Congress fully intended to permit punishing such conspiracies twice as severely as those which embraced only one of the specified criminal objects. See *American Tobacco Co. v. United States*, 328 U.S. 781, 787–789, 66 S.Ct. 1125, 90 L.Ed. 1575 (1946). Congress has in effect determined that a conspiracy to import drugs with intent to distribute is twice as serious as a conspiracy to import for personal use or a conspiracy to possess with intent to distribute. Such a determination does not offend the double jeopardy clause nor does it on its face prescribe punishment disproportionate to the crime which may violate the Cruel and Unusual Punishment Clause. *Gore v. United States, supra*, 357 U.S. at 392–393, 78 S.Ct. 1280.

Affirmed.